**Jin Xiu CHEN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Attorney General Alberto R. Gonzales, Respondents.**

**Docket No. 06–0762–AG.**

United States Court of Appeals, Second Circuit.

Submitted: Sept. 25, 2006.

Decided: Nov. 6, 2006.

Gregory Marotta, Law Office of Richard Tarzia, Belle Mead, NJ, for petitioner.

William J. Leone, United States Attorney for the District of Colorado, Terry Fox, Assistant United States Attorney, Denver, CO, for respondents.

Before: POOLER, SOTOMAYOR, and KATZMANN, Circuit Judges.

PER CURIAM:

Petitioner Jin Xiu Chen, a citizen of the People's Republic of China, seeks review

of a January 20, 2006 order of the Board of Immigration Appeals ("BIA") affirming the September 21, 2004 decision of Immigration Judge ("IJ") Jeffrey S. Chase denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Jin Xiu Chen,* No. A96 257 717 (B.I.A. Jan. 20, 2006), *aff'g* No. A96 257 717 (Immig. Ct. N.Y. City Sept. 21, 2004). In its order, the BIA also denied Chen's motion to remand. *In re Jin Xiu Chen,* No. A96 257 717 (B.I.A. Jan. 20, 2006). Chen's sole claim for relief is that she fears forced sterilization if she is returned to her home city of Changle City, Fujian Province, because she has three U.S.-born children. For the reasons to be discussed, because the documents identified in *Shou Yung Guo v. Gonzales,* 463 F.3d 109 (2d Cir. 2006), and several documents submitted by Chen that the BIA did not address, suggest the existence an official policy of forced sterilization in Changle City, we remand this case to the BIA to determine the validity, scope, and import of these documents and to reconsider Chen's claim of future persecution in light of them. In an accompanying summary order, we address the other arguments presented in Chen's petition for review.

The IJ found that Chen had failed to present evidence sufficient to establish that she would face forced sterilization if returned to her home city in China. Both this Court and the BIA have concluded that the evidence previously available to support Chinese asylum applicants' claims of forced sterilization, including the oft-submitted "Aird Affidavit" prepared by retired demographer and immigration expert Dr. John S. Aird, was inadequate to establish the existence of an official policy of forced sterilization on the part of any Chinese province or locality, and thus insufficient to show that the applicants were likely to face forced sterilization if re-turned to China. *See Wei Guang Wang v. BIA,* 437 F.3d 270, 274–76 (2d Cir.2006) (finding that the Aird Affidavit was insufficient to establish the existence of a policy of forced sterilization in China); *Jian Xing Huang v. U.S. INS,* 421 F.3d 125, 129 (2d Cir.2005) (concluding that the petitioner's claim that he faced forced sterilization in China was "speculative at best" because he offered as support for his claim only his own uncorroborated testimony that his sister-in-law had been forcibly sterilized); *In re C–C–,* 23 I. & N. Dec. 899, 903 (B.I.A. 2006) (finding the Aird Affidavit insufficient to establish prima facie eligibility for relief on a claim of forced sterilization). With several exceptions that we discuss below, most of the evidence Chen submitted, including the Aird Affidavit and her uncorroborated testimony that her elder sister, paternal aunt, and sister-in-law had been forcibly sterilized, was too general or speculative under our precedent and the BIA's to establish the existence of an official policy of forced sterilization in Changle City or Fujian Province generally to which she would be subject if returned.

The documents recently addressed by this Court in *Shou Yung Guo,* however, suggest that there may in fact be an official policy of forced sterilization in Fujian Province. *Shou Yung Guo* discussed documents reflecting 2003 decisions of the Changle City Family–Planning Administration and the Fujian Province Department of Family–Planning Administration, both of which indicated that parents of children born abroad are subject to the same family-planning policies as parents of native-born children, as well as a 1999 document entitled "Q & A for Changle City Family–Planning Information Handbook" issued by Changle City family-planning authorities, which states that forced sterilization is mandated for parents of two or more children. 463 F.3d at 112–13. In

*Shou Yung Guo,* we remanded to the BIA because "the documents unquestionably [were] material" to Guo's claim and "[i]t [was] not apparent to us that the BIA ever really paid any attention to the documents" in denying Guo's motion to reopen. *Id.* at 115.

Both this Court and the BIA have previously found persuasive the State Department's China Country Reports, which find no evidence that forced sterilization is part of official Chinese family-planning policy. *See Wei Guang Wang,* 437 F.3d at 274 (noting that the Country Report finds no official policy of forced sterilization); *Jian Xing Huang,* 421 F.3d at 129 (concluding that the BIA was entitled to rely on the Country Report in rejecting a petitioner's claim of forced sterilization); *In re C–C–,* 23 I. & N. Dec. at 903 ("Having considered all of the relevant evidence, we find that the State Department reports are more persuasive than the Aird Affidavit in determining the chances that the respondent will be sterilized if she returns to China."). As we observed in *Shou Yung Guo,* these new documents "cannot easily be reconciled with the 2002 State Department Report which claims that the Chinese government opposes forced sterilization." 463 F.3d at 115. The State Department reports, which address the same time period but find no official policy of forced sterilization, in Changle City or elsewhere in Fujian Province, fail to recognize or respond to these documents, which appear to be statements of official policy that the State Department says does not exist. Therefore these documents, if authentic, potentially undermine the BIA's and our continued reliance on the State Department reports.

In *Tian Ming Lin v. U.S. Dep't of Justice,* 468 F.3d 167, No. 06–2356, 2006 WL 3060101 (2d Cir. Oct.30, 2006) (per curiam), we granted a motion to remand in light of the *Shou Yung Guo* documents in another case involving a claim of fear of forced sterilization by an asylum applicant from Fujian Province. *Id.* at 169. As we stated in *Tian Ming Lin,* these documents are "too important to ignore," *id.,* and therefore we take cognizance of them here as well though Chen has not brought them to our attention. Having done so, we conclude that they necessitate a remand, as in *Tian Ming Lin,* "so that [the BIA] may determine whether [these documents] establish the existence of an official policy, in Changle City or Fujian Province generally, of forced sterilization of parents of two or more children, including parents whose children were born abroad, and so that the BIA may reassess, in light of these documents, [Chen's] claim that [she] risks forced sterilization if returned to [her] home province in China." *Id.*

We emphasize that we do not yet know whether these documents are authentic, and we presume that the BIA's forensic experts are capable of addressing this important threshold question. Until we have an answer, however, we must assume that they are what they purport to be. Returning a person to a part of China where he or she will face an officially sanctioned policy of forced sterilization would appear to violate United States law, which expressly holds that a person with a well-founded fear of forced sterilization is a refugee eligible for asylum, except where the government has met its burden of proving that the applicant could avoid persecution by relocating to another region his or her country of nationality. *See* 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 208.13(b)(2)(ii) (permitting return of an asylum applicant with a well-founded fear of future persecution where relocation to another region of the country of nationality is reasonable "under all the circumstances"); *id.* § 208.13(b)(3)(ii) (placing the burden of proving the reasonableness of

relocation on the government where "the persecutor is a government or is government-sponsored").

Additionally, we are troubled by the IJ's failure to discuss several documents Chen did present that are themselves strongly suggestive of an official policy of forced sterilization in Changle City. Chen included, as an exhibit to the Aird Affidavit, the 2003 Fujian Province and Changle City decisions that were discussed in *Shou Yung Guo,* which state that upon return to Fujian Province, parents of children born abroad are subject to the same family-planning policies as parents of children born in China. Chen also submitted a document that purports to be a translation of a 1995 missive from the "Changle City Family Planning Policy Leading Team" to officials of town and village governments and other officials in Changle City. It states that individuals in early marriages (that is, marriages by individuals below the statutory age of marriage) who have a child "must undergo sterilization after the first childbirth, no matter [whether] the first birth is a boy or girl." It also states that unmarried women "with [a] history of giving childbirth [sic], no matter the number of childbirth[s] she had before, ... must comp[ly] with the sterilization policy," and that "[t]hose subjects who gave out-of-plan birth must be imposed with [sic] sterilization operation." Even assuming these documents do not directly establish that Chen, who was married and did not claim to have been involved in an early marriage, would face forced sterilization, they do indicate that some individuals are subject to an official policy of forced sterilization in Changle City and that parents of children born abroad, such as Chen, are subject to the same penalties under the family-planning policy as parents of children born in China. We presume that on remand the BIA will consider the authenticity, scope, and import of the 1995 Changle City document along with the documents identified in *Shou Yung Guo.*

In sum, the documents identified in *Shou Yung Guo* and the 1995 Changle City document Chen submitted cast doubt on the IJ's finding that Chen will not face forced sterilization if returned to China. We remand this case to the BIA so that it may determine the validity, scope, and import of these documents, and if they are authentic, reassess Chen's claim in light of them.[1]

---

1. Because, as we discuss in the accompanying summary order, we are uncertain whether the BIA denied Chen's asylum claim in the exercise of discretion, we remand only Chen's withholding of removal claim. If the BIA determines that Chen was properly denied asylum only because of her failure to establish a fear of future persecution, and not on a discretionary basis, it should consider the effect of the *Shou Yung Guo* documents on her asylum claim as well.