RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0166p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

FANG HUANG,

        *Petitioner,*

     *v.*

MICHAEL B. MUKASEY, Attorney General,

        *Respondent.*

No. 07-3127

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A45 897 793.

Submitted: April 24, 2008

Decided and Filed: April 25, 2008

Before: MOORE and McKEAGUE, Circuit Judges; SCHWARZER, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Theodore N. Cox, LAW OFFICES, New York, New York, for Petitioner. Melissa S. Leibman, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. An Immigration Judge ("IJ") found that Fang Huang ("Huang") entered a fraudulent marriage in 1996 for the purpose of securing admission to the United States, denied Huang's application for asylum as untimely filed, and denied her applications for withholding of removal under the Immigration and Nationality Act ("INA") and under the Convention Against Torture ("CAT"). While her case was pending before the BIA, Huang moved to remand her case to the Immigration Court and reopen the record so that she could submit additional evidence and apply for an adjustment of status. The BIA dismissed Huang's appeal from the IJ's decision and denied her motions to remand. In March 2008 while her case was pending before this court, Huang filed with us a Motion to Remand to the Board of Immigration Appeals and to Supplement the Record. For the reasons discussed below, we **DISMISS** Huang's petition for review insofar as it seeks review of the denial of her application for asylum. In all other respects,

_____

[*] The Honorable William W Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

we **DENY** Huang's petition for review and her motion to remand to the BIA and supplement the record.

## I. BACKGROUND

### A. Procedural History

Huang, now a thirty-four-year-old native and citizen of China, entered the United States on July 9, 1997, as a conditional permanent resident on the basis of her marriage to John Higgins ("Higgins"), a United States citizen. More than a year earlier, in March 1996, when Higgins took a two-week trip to China accompanied by Huang's brother-in-law, Huang had married Higgins in China.

On April 27, 1999, Huang and Higgins submitted a joint petition to remove the conditions on residence. On November 16, 2000, Frank Ledda ("Ledda"), an adjudications officer of the former Immigration and Naturalization Service ("INS"), interviewed Huang and Higgins in Michigan regarding their joint petition. That same day, after questioning, Higgins submitted a sworn statement to Ledda, stating that he was paid $4,000 to marry Huang, that he did not know that marriage for the purpose of evading the U.S. immigration laws was illegal, that he and Huang had never lived together or consummated the marriage, and that Huang lived in New York while he lived in Michigan.

On November 24, 2000, the INS issued a Notice to Appear to Huang, charging her with being subject to removal from the United States because her status as a conditional permanent resident had terminated pursuant to INA § 237(a)(1)(D)(i), 8 U.S.C. § 1227(a)(1)(D)(i). The INS also charged that Huang was subject to removal under INA § 237(a)(1)(G)(ii), 8 U.S.C. § 1227(a)(1)(G)(ii), for gaining admission to the United States on the basis of a fraudulent marriage.

On June 12, 2001, Huang and Higgins were divorced by a judgment issued in Grand Rapids, Michigan.

On April 16, 2002, at a scheduling hearing, Huang's attorney stated that Huang intended to seek the removal of her conditional permanent-resident status on the basis of a good-faith marriage but that she did not intend to seek asylum or any other relief. Nonetheless, at Huang's merits hearing on May 12, 2005, Huang submitted an application for asylum and for withholding of removal pursuant to the INA and the CAT.

Huang based her application for asylum on the following claims: (1) that on October 15, 2004, she married Yifei Fong,[1] a naturalized U.S. citizen, in New York; (2) that she cared for Fong's son, who was born in 1989; and (3) that on November 24, 2004, she and Fong had a child together named Oscar Fong. The merits hearing on May 12, 2005 thus proceeded in two steps. First, the IJ considered the nature of Huang's marriage to Higgins, with the government contending that Huang was removable from the country on the basis of fraudulently entering the marriage with Higgins and with Huang arguing that this marriage was in good faith and that the IJ should grant her application

---

[1] The record contains uncertainty regarding the name of Huang's purported second husband, and for consistency we will refer to him as "Fong." When he testified at the May 2005 merits hearing, the transcript records him as stating his name as "Yifei Fong" and also records the translator as spelling the name of his son born in 1989 as "F O N G, F U." Joint Appendix ("J.A.") at 596-97 (Fong, Hr'g Tr. at 221-22). In her brief, however, Huang generally refers to him as "Yi Fei Fang" or "Mr. Fang," Pet'r Br. at 12, 24, 25, although her brief also occasionally refers to him as "Yifie Fong" or "Mr. Fong," Pet'r Br. at 33-35, 40; *see also* J.A. 216 (Brief to BIA at 4) (referring to "Yifei Fong"). Finally, in both her application for asylum and her application to adjust status, Huang stated that his name is "Yi Fei Fang," J.A. at 844, 852 (Asylum Application); J.A. at 1110-11 (Application to Adjust Status). Huang's attorney also spelled the name of her son with Fong as Oscar "F A N G." J.A. at 411 (Hr'g Tr. at 36).

for the removal of the conditions on residence on the basis of a good-faith marriage. Second, the hearing then concerned Huang's application for asylum and withholding of removal under the INA and the CAT. On the issue of the nature of Huang's marriage to Higgins, the government presented testimony from Ledda, Higgins, and Huang. Huang's testimony also pertained to her applications for asylum and withholding of removal, and following her testimony, Huang's purported new husband Fong testified.

On June 16, 2005, the IJ issued an oral decision finding that Huang had fraudulently entered marriage with Higgins for the purpose of circumventing the immigration laws and that she was therefore removable. The IJ also denied Huang's applications for asylum and withholding of removal and ordered that she be removed from the United States. Huang timely appealed to the BIA from the IJ's decision.

In August 2005, Huang filed with the BIA a motion to reopen and remand based on changed circumstances, claiming that Huang was pregnant with a second child with Fong. In her brief to the BIA filed in July 2006, Huang also moved to remand for adjustment of status based on her marriage to Fong in October 2004. In August 2006, and again in October 2006, Huang filed additional materials with the BIA in support of her motions to remand, claiming that "newly discovered evidence" indicated that Chinese nationals with children born in the United States would be treated the same as Chinese nationals with children born in China. Pet'r Br. at 22-23.

On January 25, 2007, the BIA dismissed Huang's appeal and denied Huang's motions to remand. Huang timely filed a petition for review of the BIA's decision with this court. On March 11, 2008, Huang filed with us a motion to remand her case to the BIA and to supplement the record, and on March 18, 2008, Huang filed a motion with the BIA to reopen and remand her case to the IJ.

## B. The Hearing Before the Immigration Judge

At the start of the May 2005 hearing, the IJ observed that Huang's application for asylum and withholding of removal under the INA and the CAT lacked information and documentation in several crucial areas. In particular, the IJ noted that, although the birth of a child in November 2004 was a predicate for her changed-circumstances claim, Huang had failed to file a birth certificate for the child, nor was the child present at the hearing. Joint Appendix ("J.A."). at 401 (Hr'g Tr. at 26); *see also* J.A. at 319 (Oral Decision at 39).

After discussion of Huang's application, the government presented evidence that Huang's marriage to Higgins was fraudulent. Ledda, the adjudications officer who interviewed Huang and Higgins in November 2000, was the government's first witness. Ledda testified about his recollections of that interview, during which he became suspicious about the nature of Huang and Higgins's marriage because "they submitted minimal evidence in support of their petition [to remove the conditions on her residence] and there was no[t] what I consider real convincing evidence to place her in Michigan or to establish she had a life in Michigan." J.A. at 426 (Ledda, Hr'g Tr. at 51). Huang had described a trip to New York to visit her sister, and when Ledda asked for the address of Huang's sister in New York, Higgins produced what appeared to be a business card and began reading information from it. Ledda asked to see the card and found that the card contained Huang's name and what appeared to be contact information for *Huang* in New York. The card also contained a social security number for Huang, and the three-digit prefix showed that it had been issued in New York.

Ledda testified that he then separated the couple, and at that point Higgins admitted that his prior statements about the marriage were false and stated that the marriage was a "fraud" that "had been arranged by his brother-in-law, that he had been paid money to [go to] China and marry, they

had never lived together, she had never lived in Michigan." J.A. at 429 (Ledda, Hr'g Tr. at 54). Ledda stated that Higgins further admitted that "the evidence they submitted, such as the bank account was opened at the request of his brother-in-law, but only Mr. Higgins had access to that account." J.A. at 429-30 (Ledda, Hr'g Tr. at 54-55). Higgins gave a sworn written statement and his answers to Ledda's questions were memorialized in a typed statement.

Higgins testified next at the hearing. Higgins testified that he was "paid to marry" Huang by her family, J.A. at 485 (Higgins, Hr'g Tr. at 110), that he and Huang never had sexual relations, that he understood the situation as "a marriage for her to get a green card," J.A. at 490 (Higgins, Hr'g Tr. at 115), that he had few "sober moments" on his trip to China and could not definitively remember any marriage ceremony, J.A. at 506-08 (Higgins, Hr'g Tr. at 131-33), that he was not even sure when Huang ultimately entered the United States, having lost contact with Huang and her family in the period following his brief two-week visit to China, and that he bought a Camaro with money that he received from Huang's family. Higgins also testified that he and Huang opened a joint bank account the day before filing the joint petition to remove the conditions on residence in April 1999. Higgins stated that he and Huang divorced in 2001.

Huang then testified that her marriage to Higgins was bona fide, that her mother is a U.S. citizen, that her father has a green card, and that her parents live in New York and have been living in the United States for more than ten years. Huang also stated that she has two sisters and that all of her family has been in the United States since 1996. Huang testified that, although her entire family was living in the United States, the benefit of moving closer to her family was a factor that "didn't come to my mind" when she married Higgins, a virtual stranger. J.A. at 562 (Huang, Hr'g Tr. at 187).

In regard to her application for asylum and withholding of removal, Huang testified that she and her current husband—Yifei Fong, whom she stated she married on October 15, 2004—had a child born on November 24, 2004. J.A. at 546-47 (Huang, Hr'g Tr. at 171-72). Huang also testified that she cared for a son that Fong fathered with another woman in 1989. Huang testified that her husband, her sisters, and her parents, who have had three children, have traveled to China several times in the recent past and had not experienced any problems in China despite having more than one child. Huang claimed that she would be sterilized if she returned to China, but she admitted that she did not have any evidence of a government policy to that effect. Huang testified that she did not marry her current husband to have children, as having children was something that "never came to my mind." J.A. at 548-50 (Huang, Hr'g Tr. at 173-75). Huang stated that she and her current husband Fong "would like to have one more [child]. If it's a girl, that's okay, but if it's boy, maybe we will have some more." J.A. at 579 (Huang, Hr'g Tr. at 204).

The final witness to testify at the hearing was Fong, Huang's purported second husband. He stated that he had a son born in China in 1989 and that he and Huang had a son born in November 2004. J.A. at 597 (Fong, Hr'g Tr. at 222). Fong claimed that both children would be attributed to Huang for the purpose of China's family-planning policies, but stated that he had not brought any evidence of such policies to the hearing. J.A. at 610, 614-15 (Fong, Hr'g Tr. at 235, 239-40). Fong testified that he and Huang had agreed to have "[t]wo more" children, J.A. at 610-11 (Fong, Hr'g Tr. at 235-36), and that he would not have married Huang if she had been unable to conceive a child. J.A. at 617 (Fong, Hr'g Tr. at 242).

The IJ also considered documentary evidence, including the 2004 Department of State Country Report on Human Rights Practices for China, as well as various articles pertaining to China's population-control policies. J.A. at 285-86 (Oral Decision at 5-6). Two days prior to the May 2005 hearing, Huang submitted a 2003 affidavit by the demographer John Aird, but the IJ declined to consider it because Huang filed it in an untimely fashion. J.A. at 286 (Oral Decision at 6).

## C.  The IJ's Decision

The merits hearing concluded on May 12, 2005, and the IJ rendered an oral decision on June 16, 2005.  As he had at the merits hearing, the IJ discussed several deficiencies in Huang's application for asylum and withholding of removal:  Huang never submitted an original marriage registration regarding her purported marriage to Fong; her asylum application listed their marriage date as October 25, 2004, while testimony indicated that they married on October 15, 2004, and Huang's attorney had, in a July 2004 hearing, represented that the two were already married; Huang had not filled out the section of her asylum application with information regarding her alleged husband's status; no evidence had been presented to indicate that Fong's son born in 1989 existed or that Huang had adopted him; and no evidence demonstrated that Huang and Fong had a child in November 2004.  J.A. at 285, 288, 302-07, 319 (Oral Decision at 5, 8, 22-27, 39); J.A. at 387 (July 20, 2004 Hr'g Tr. at 13) (Huang's attorney's statement that "[s]he is married to somebody else now").

The IJ denied Huang's application for asylum as untimely given the statutory one-year filing deadline, which is subject to certain exceptions for applications filed within a reasonable time of certain changed circumstances. J.A. at 294-96 (Oral Decision at 14-16) (citing INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B)).  Further, the IJ found that Huang had failed to prove the applicability of the changed-circumstances exception to the one-year filing requirement because she failed to prove the existence of either alleged triggering event—her second marriage (to Fong) or the birth of a child in November 2004.  J.A. at 323 (Oral Decision at 43); *see also* J.A. at 304 (Oral Decision at 24) (stating that "there is no documentary proof that this child exists").  Even assuming the existence of those events, the IJ found that her asylum application was not filed until it was completed on the day of the hearing in May 2005 and that the delay between the alleged triggering events in November 2004 and the filing in May 2005 was not a reasonable period of time.  J.A. at 323 (Oral Decision at 43).  Finally, the IJ denied all of her applications on their merits, finding that Huang had failed to prove that China would consider an adopted child and/or a U.S.-born child in applying its allegedly coercive family-planning policies.  *Id.*  The IJ also concluded that Huang and Fong had "not demonstrated that they would have or would want anymore children with respect to this marriage because they cannot get the story straight as to how many children they want.  Plus, of course, we already know that Huang, she says, 'We didn't get married to have children,' and he says, 'Yes.  We got married to have children.'"  *Id.*

In regard to the alleged fraudulent marriage between Huang and Higgins, the IJ found that the government had satisfied its burden of showing by clear and convincing evidence that Huang fraudulently entered a marriage for the purpose of securing admission to the United States.  J.A. at 290-91 (Oral Decision at 10-11).  The IJ concluded that "all of the evidence taken together aptly demonstrates beyond any doubt in the Court's mind that the first marriage . . . was done to secure Immigration benefits," noting among other things "the paucity of any evidence that they have a joint life together."  J.A. at 321 (Oral Decision at 41).

## D.  The BIA's Decision

On January 25, 2007, the BIA dismissed Huang's appeal and denied her motions to remand. J.A. at 1-4.  The BIA "adopt[ed] and affirm[ed]" the IJ's decision that Huang's marriage to Higgins was not a good-faith marriage and that Huang "failed to demonstrate eligibility for removal of conditional permanent residence on the basis of good faith marriage."  J.A. at 2-3.  As to Huang's "application for asylum, withholding of removal, and relief under the CAT, the [IJ's] . . . findings of fact have not been shown to be clearly erroneous, and we are not persuaded that [the IJ] otherwise erred in ruling that [Huang] failed to meet her burden of establishing eligibility for the relief sought." J.A. at 3.  In particular, the BIA concluded that the IJ "correctly denied the asylum application as untimely."  *Id.*

The BIA also "affirm[ed the IJ's] decision to deny withholding of removal and relief under the CAT." *Id.* The BIA stated that Huang "failed to demonstrate past persecution" because she "did not suffer any serious harm before leaving her native China" and "[l]ikewise, [Huang] failed to submit sufficient evidence reflecting that it is more likely than not that she would be persecuted on account of her opposition to China's coercive population control policies or any other protected ground, or that she would be tortured upon return to China." *Id.*

Finally, the BIA denied both of Huang's motions to remand. As to her motion to remand to allow her to apply for an adjustment of status based upon her marriage in October 2004 to Fong, a U.S. citizen, the BIA cited its decision in *Matter of Velarde*, 23 I. & N. Dec. 253 (BIA 2002), to support its conclusion that "the requirements with respect to evidence that is to accompany a motion to remand have not been met in this case," noting also that "the DHS opposes [Huang's] motion because she previously perpetrated marriage fraud." J.A. at 3. Regarding Huang's motion to remand to reapply for asylum on the basis of a second child born in the United States, the BIA cited its decision in *Matter of C-C-*, 23 I. & N. Dec. 899 (BIA 2006), in concluding that Huang "has failed to submit sufficient evidence demonstrating that her subjective fear of harm on account of her opposition to China's coercive population control policies is objectively reasonable." J.A. at 3.

## E.  Huang's Motion to Remand to the BIA

On March 11, 2008, Huang filed in this court a motion to remand her case to the BIA and to supplement the record, claiming that "the petition for review in this matter depends in large measure upon whether or not deference is owed to the BIA decision *In re J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007) and *In re S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007)." Pet'r Mot. to Remand at unnumbered page. She argues that these decisions rely in turn on the May 2007 U.S. Department of State Profile of Asylum Claims and Country Conditions for China ("2007 Profile"), which she asserts contains "significant translation errors" that make the 2002 Fujian Province Family Planning Regulation appear "less coercive than a correct translation would indicate." Pet'r Mot. to Remand at 2. The government filed a response opposing the motion, contending that Huang had not exhausted her available administrative remedies. Huang filed a reply claiming that on March 18, 2008, she filed a motion with the BIA to reopen and remand her case to the IJ based on the same alleged mistranslations. As an alternative to our remanding her case to the BIA, Huang requested that we hold her case in abeyance pending the outcome of her motion to reopen and remand filed with the BIA.

## II.  ANALYSIS

## A.  Huang's Appeal of the Denial of her Application for Removal of Conditions on Residence

The first issue in Huang's appeal concerns the nature of her marriage to Higgins and the IJ's decision on this issue, which the BIA "adopt[ed] and affirm[ed]." J.A. at 2-3 (BIA Decision at 1-2). The government contended that Huang was removable from the U.S. on the basis of fraudulently entering the marriage with Higgins, whereas Huang argued that the marriage was entered in good faith and that the IJ should grant her application for the removal of the conditions on residence on the basis of a good-faith marriage. The IJ found that Huang's "marriage to Mr. Higgins was undoubtedly fraudulent" and therefore concluded that Huang's "claim for a good faith waiver crumbles under its own weight." J.A. at 297 (Oral Decision at 17).

### 1.  Legal Standards

Under 8 U.S.C. §§ 1186a(a)(1) and (d)(2), if an alien has been granted conditional permanent-resident status based on a marriage to a United States citizen, the alien and her spouse must petition within a ninety-day period "before the second anniversary of the alien's obtaining the status" to have the conditions removed. After review of the petition and interview of the spouses,

the Attorney General may make a favorable determination and then shall remove the conditional basis of the permanent-residence status.  8 U.S.C. § 1186a(c)(3)(B).  However, the conditional permanent-resident status shall be terminated if the Attorney General determines that the marriage "was entered into for the purpose of procuring an alien's admission as an immigrant."  8 U.S.C. § 1186a(b)(1).  The alien is then entitled to request review of that adverse determination in a proceeding to remove the alien from the U.S., and "the burden of proof shall be on the Attorney General to establish, by a preponderance of the evidence" that the marriage was entered to procure the alien's admission.  8 U.S.C. § 1186a(b)(2).  An alien may also seek a hardship waiver to "remove the conditional basis of the permanent resident status" by demonstrating inter alia that "the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated . . . and the alien was not at fault in failing to meet the requirements" for removal of the conditional basis.  8 U.S.C. § 1186a(c)(4).

"Where the BIA adopts the IJ's reasoning, the court reviews the IJ's decision directly to determine whether the decision of the BIA should be upheld on appeal."  *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005) (citing *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003)).

On appeal, we review to determine whether substantial evidence supports the factual findings underlying the IJ's decision regarding the nature of the marriage between Huang and Higgins.  *See Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1147-48 (9th Cir. 2005); *see also Acheampong v. Keisler*, 250 F. App'x 158, 160 (6th Cir. 2007).  A reviewing "court may reverse the BIA's determination if the evidence 'not only supports a contrary conclusion, but indeed *compels* it.'"  *Gilaj*, 408 F.3d at 283 (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)).  "Under this standard, '[a] factual determination by the Board that an alien's marriage was entered for the purpose of gaining entry into the United States is conclusive if it is supported by reasonable, substantial, and probative evidence in the record considered as a whole.'"  *Acheampong*, 250 F. App'x at 160 (quoting *Bazzi v. Ashcroft*, 118 F. App'x 953, 956 (6th Cir. 2004)) (alteration in original).

## 2. Analysis

As detailed above, the IJ found that "the overwhelming evidence beyond any doubt in the Court's view is that [Huang's] marriage to Mr. Higgins was done merely to secure her lawful permanent resident status" and that therefore Huang's "claim for a good faith waiver crumbles under its own weight."  J.A. at 291, 297 (Oral Decision at 11, 18).  On this portion of Huang's appeal, the BIA simply adopted the IJ's reasoning, J.A. at 2-3 (BIA Decision at 1-2), and we thus review the IJ's decision.  *Gilaj*, 408 F.3d at 282-83.  Huang's arguments that her marriage to Higgins was in good faith are unpersuasive and fail to satisfy the deferential standard of review that applies in this case.

In challenging the IJ's finding that her marriage to Higgins was not in good faith, Huang argues that her own testimony "provided no reason to believe that she entered into her marriage to John Higgins for the primary purpose of circumventing immigration laws," Pet'r Br. at 28, and she then simply asserts that the IJ should have deemed incredible Higgins's testimony that he *did* view their marriage as simply intended to procure her entry into the United States, Pet'r Br. at 30-33.  Huang then incorrectly states that the IJ erred in concluding that their marriage was fraudulent because Higgins's "testimony was the *only basis* for the finding of marriage fraud."  Pet'r Br. at 33 (emphasis added).  This statement wholly ignores that *significant* other evidence demonstrated the fraudulent nature of the marriage between Higgins and Huang, including testimony at the hearing offered by Ledda, the officer who interviewed Higgins and Huang in 2000, as well as the documentary evidence produced at that time, including Higgins's sworn statement that the marriage was fraudulent, the bank record of an essentially empty "joint" account, and the business card containing contact information for Huang in New York and a New York-issued social security

number for Huang. Huang's failure to address these other significant bases for the IJ's finding that the marriage was fraudulent and not in good faith is fatal to her appeal.

We therefore hold that substantial evidence supported the IJ's finding that the marriage between Huang and Higgins was not entered into in good faith but rather "was entered into for the purpose of procuring [Huang's] admission as an immigrant." 8 U.S.C. § 1186a(b)(1)(A)(I). Thus, we **DENY** review of the BIA's affirmance of the IJ's decision to terminate Huang's permanent-resident status.

## B. Asylum

Huang appeals the denial of her application for asylum, but the government contends that we lack jurisdiction to review the IJ and BIA's determination that Huang's application for asylum was untimely filed. We agree that we lack jurisdiction to review Huang's asylum claim.

The INA requires that an asylum applicant "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). This requirement is subject to exceptions in cases when the alien "demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within" the one-year required period. 8 U.S.C. § 1158(a)(2)(D). Another section of § 1158 provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" regarding whether changed or extraordinary circumstances exist to excuse an application for asylum that is filed later than one year after entry into the United States. 8 U.S.C. § 1158(a)(3).

In this case, the IJ explicitly denied Huang's asylum application on the basis that it was not timely filed and that no changed or extraordinary circumstances excused the delay. J.A. at 294-96, 322-23 (Oral Decision at 14-16, 42-43). The BIA agreed that the asylum application was untimely.

We have held that § 1158(a)(3) "bar[s] our review of asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006) (construing judicial-review limitation of 8 U.S.C. § 1158(a)(3) in light of REAL ID Act Amendment to 8 U.S.C. § 1252(a)(2)(D)). In *Almuhtaseb*, we held that we lacked jurisdiction to consider an alien's application for asylum based on changed circumstances pertaining to violence in the West Bank because that petitioner's "argument regarding changed circumstances [was] 'predominantly factual.'" *Id.* at 748-49 n.3 (quoting *Ramadan v. Gonzales*, 427 F.3d 1218, 1222 (9th Cir. 2005)).

Here, the BIA stated that, with regard to Huang's "application for asylum, withholding of removal, and relief under the CAT," "[t]he Immigration Judge's findings of fact have not been shown to be clearly erroneous." J.A. at 3 (BIA Decision at 2). The IJ found that Huang had failed to prove the existence of either her marriage to Fong or the birth of her son and that, even assuming the existence of these events, Huang's delay in filing her asylum application from November 2004 to May 2005 constituted an unreasonable delay. J.A. at 323 (Oral Decision at 43) (stating that "the trigger event, the so-called marriage [to Fong] . . . has not been proven, and the subsequent two children of the marriage which have not been proven" and that Huang "cannot prove the trigger event, and even if she could, she cannot prove that it was done in a reasonable period of time"). The BIA agreed with the IJ's finding that the asylum application was not timely filed, stating that the application "was not filed within a reasonable period of time after the birth of her child in November 2004" and that "[t]hus, the Immigration Judge correctly denied the asylum application as untimely." J.A. at 3 (BIA Decision at 2).

Huang's "argument regarding changed circumstances is 'predominantly factual,'" *Almuhtaseb*, 453 F.3d at 748-49 n.3 (quoting *Ramadan*, 427 F.3d at 1221-22), and accordingly we hold that we lack jurisdiction to review the denial on the ground of untimeliness of Huang's application for asylum. Therefore we **DISMISS** Huang's petition insofar as it seeks review of the denial of asylum.

## C. Withholding of Removal Under the INA and the CAT

### 1. Legal Standards

"We review the BIA's decision on a request for withholding of removal under the same standard regardless of whether the request was made pursuant to the INA or the CAT." *Almuhtaseb*, 453 F.3d at 749. "To prevail on a petition for withholding of removal under the INA, or on a petition for withholding of removal under the CAT, an alien must show that there is a 'clear probability' that she would be subject to persecution, for the INA, or to torture, for the CAT, on the basis of one of the five statutorily protected grounds were she removed from this country." *Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007). "This showing of 'clear probability' requires more than that needed to demonstrate refugee status, which requires only a "'well-founded fear of [future] persecution.'" *Id.* (quoting 8 C.F.R. § 208.13(b)). The regulations define the "clear probability" standard as requiring that "[a]n applicant who has not suffered past persecution . . . establish that it is more likely than not" that she would be persecuted or tortured on the basis of one of the protected grounds upon her return. 8 C.F.R. § 1208.16(b)(2).

When the BIA does "not summarily affirm or adopt the IJ's reasoning and provide[s] an explanation for its decision, we review the BIA's decision as the final agency determination." *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007); *see also Cordova v. Gonzales*, 245 F. App'x 508, 510 (6th Cir. 2007). In reviewing the decision of the BIA, we must treat "administrative findings of fact [as] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Finally, although the government challenged Huang's eligibility to apply for asylum, the government notes that "[n]otwithstanding ineligibility for asylum . . . an alien may still apply for withholding of removal." Resp't Br. at 3 n.5 (citing 8 C.F.R. § 1208.13(c)(1)).

### 2. Analysis

The IJ and the BIA both denied Huang's application for withholding of removal under the INA and the CAT, but it appears that the BIA did not entirely adopt and affirm the IJ's reasoning. *See* J.A. at 3 (BIA Decision at 2) ("Inasmuch as we are in agreement with the *outcome* of the [IJ's] decision, we affirm his decision to deny withholding of removal [under the INA] and relief under the CAT.") (emphasis added).[2] Given that the BIA provided its own explanation and did not fully adopt and affirm the IJ's reasoning in regard to Huang's application for withholding of removal under the INA and the CAT, we review the BIA's reasoning. *See Ilic-Lee*, 507 F.3d at 1047; *Cordova*, 245 F. App'x at 510.

---

[2] The IJ had stated that Huang "has not proven not only the two children of this marriage, she has not proven even assuming arguendo that they do have these two children, that the one child would be held accountable to them under the coercive population control rules." J.A. at 323 (Oral Decision at 43). The BIA did state that the IJ's "findings of facts have not been shown to be clearly erroneous" "[w]ith regard to [Huang's] application for asylum, withholding of removal, and relief under the CAT." J.A. at 3 (BIA Decision at 2). Nonetheless, the BIA's statement that it affirmed the denial of withholding of removal under the INA and the CAT "[i]nasmuch as we are in agreement with the *outcome* of the [IJ's] decision," *id.* (emphasis added), suggests that the BIA did not adopt and affirm all of the IJ's reasoning.

The BIA provided the following reasoning for its decision regarding Huang's application for withholding of removal under the INA and the CAT. The BIA observed that Huang "did not suffer any serious harm before leaving her native China in July 1997" and "[t]hus, she failed to demonstrate past persecution." J.A. at 3 (BIA Decision at 2). The BIA then found that Huang "failed to submit sufficient evidence reflecting that it is more likely than not that she would be persecuted on account of her opposition to China's coercive population control policies or any other protected ground, or that she would be tortured upon her return to China." *Id.* Further, in its discussion rejecting Huang's motion to remand to allow her to reapply for asylum on the basis of the birth in 2006 of her second child with Fong, the BIA cited its decision in *Matter of C-C-*, 23 I. & N. Dec. 899 (BIA 2006), to support its conclusion that Huang "failed to submit sufficient evidence demonstrating that her subjective fear of harm on account of her opposition to China's coercive population control policies is objectively reasonable." *Id.*

In *Matter of C-C-*, the BIA criticized the same affidavit of the retired demographer, Dr. John Aird, that Huang submitted to the BIA with her August 2006 motion to reopen and remand. *See* J.A. at 138-204 (Aird Aff. dated 1/27/05).[3] In *Matter of C-C-*, the BIA noted that Aird's affidavit "is not based on personal knowledge," "provides only generalized statements that Chinese citizens who entered the United States illegally would be subject to the same punishments that apply to Chinese couples who violate the family planning laws in China," and lacks any "example of a woman being sterilized because she returned to China with a child born abroad." 23 I. & N. Dec. at 901. In *Matter of C-C-*, the BIA also observed that "the latest documents on country conditions issued by the State Department conflict with the views of Dr. Aird." *Id.* at 902. The BIA additionally stated that "American diplomats in China are unaware of 'any cases in which returnees from the United States were forced to undergo sterilization procedures on their return.'" *Id.* at 903 (quoting Bureau of Democracy, Human Rights & Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 28 (Oct. 2005)).

The finding that children born outside of China are not counted for purposes of China's population-control policies continues to be accepted by the BIA, as well as by other courts of appeals. *See In re J-W-S-*, 24 I. & N. Dec. 185, 192 (BIA 2007) ("We therefore find that the evidence of record does not demonstrate that the Chinese government has a national policy of requiring forced sterilization of parents who return with a second child born outside of China."); *In re S-Y-G-*, 24 I. & N. Dec. 247, 255 (BIA 2007) (referring to evidence "indicat[ing] that 'children born abroad, if not registered as permanent residents of China . . . are not counted against the number of children allowed by China's family planning policy'") (quoting Letter from Julieta Valls Noyes, Director, Office of Multilateral and Global Affairs, Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, to Randa Zagzoug, Deputy Chief Counsel, DHS-ICE (Jan. 9, 2007)); *Aie Wu v. Mukasey*, No. 07-3148, 2008 WL 885844, at *2 (2d Cir. Mar. 31, 2008) (referring to 2004 Dep't of State Report "finding that there is no evidence that returnees from the United States are being forced to undergo sterilization" and to 2007 Dep't of State Report that "Chinese regulations stipulate that children born overseas are not counted for purposes of administering the family planning policy"); *Song Wang v. Keisler*, 505 F.3d 615, 622-23 (7th Cir. 2007) (same).

In her brief, Huang compresses into a single section all of her arguments pertaining to asylum, withholding of removal under the INA, and withholding of removal under the CAT. Pet'r Br. at 38-50. Nowhere in that section does she confront the IJ's finding that she failed to prove the

---

[3] Two days prior to her hearing in May 2005, Huang submitted a 2003 version of Aird's affidavit but the IJ declined to consider it because Huang filed it in an untimely fashion. J.A. at 286 (Oral Decision at 6).

existence of her marriage to Fong or of the birth of a child with Fong. *Id.*[4] But because the BIA did not refer to the IJ's findings on this issue and instead rested its decision on finding that Huang failed to submit sufficient evidence showing that China's population-control policies would be applied to her on account of an adopted child or U.S.-born children, Huang's failure to contest the IJ's findings on the existence of her marriage to and children with Fong is not fatal to her appeal. In any event, Huang's argument mainly relies upon the 2003 and 2005 Aird Affidavits, and she fails to demonstrate that evidence in the record compels the conclusion that the BIA incorrectly determined that China's population-control policies would not be applied against Huang.

We therefore conclude that she is not entitled to withholding of removal under either the INA or the CAT. Thus we **DENY** her petition for review of the BIA's adverse decision on these grounds.

## D. The BIA's Denial of Huang's Motion to Remand Based on Changed Circumstances

### 1. Standard of Review

"The denial of a motion to reopen or reconsider a removal order is reviewed for an abuse of discretion." *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). "An abuse of discretion can be shown when the IJ or Board offers no 'rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)) (alterations in original).

### 2. Analysis

The BIA denied Huang's motion to remand based on the changed circumstance of her claimed second U.S.-born child because, under the Board's holding in *Matter of C-C-*, the evidence that Huang submitted in connection with this motion, consisting in large part of the 2005 Aird Affidavit, failed to show that Huang had an objectively reasonable fear of being subjected to China's coercive population-control policies on account of adopted or U.S.-born children. J.A. at 3. On

---

[4] Huang did devote a short subsection in the previous portion of her brief, which addressed her claim that her marriage to Higgins was in good faith, to disputing the IJ's credibility determinations. Pet'r Br. at 33-36. In that section, Huang pointed out that the IJ exaggerated an inconsistency in the evidence regarding Huang's marriage to Fong: the IJ stated that Huang's asylum application *and* her testimony indicated that she married Fong on October 25, 2004, whereas Fong testified that they married on October 15, 2004. J.A. at 303 (Oral Decision at 23); Pet'r Br. at 33-34. In fact, Huang, like Fong, testified that they married on October 15, 2004, J.A. at 547 (Huang, Hr'g Tr. at 172); J.A. at 597 (Fong, Hr'g Tr. at 222), but her asylum application *did* state that the marriage occurred on October 25, 2004, J.A. at 844 (Asylum App. at 2). Further, during a hearing in July 2004, Huang's attorney had asserted that she was married. Thus, the IJ correctly observed inconsistencies regarding the date of the alleged marriage between Huang and Fong, but he exaggerated their extent.

In any event, Huang attacks the IJ's findings regarding her purported marriage to Fong and the existence of her children with him as though the only basis for the IJ's finding was the date discrepancy when, in fact, the IJ pointed to *numerous* other reasons for harboring doubt about the existence of any children or a valid marriage to Fong. For instance, the IJ noted the following facts: that Huang failed to submit an original marriage registration, J.A. at 303 (Oral Decision at 23); that Huang's asylum application failed to include Fong's last place and date of entry into the United States as well as his current status, J.A. at 303-04 (Oral decision at 23-24); that one page in her asylum application claimed that Fong's son was born in 1989 but another page later in the application stated he was born in 1987, J.A. at 304, 307 (Oral Decision at 24, 27); *see also* J.A. at 844, 852 (Asylum App. at 2, 10); that Huang failed to offer a birth certificate, an alien registration number, or any documentary proof that Fong's child exists, J.A. at 304 (Oral Decision at 24); and that Huang failed to present a birth certificate for the alleged son of Huang and Fong born in November 2004 and that they did not bring the child to the hearing, J.A. at 319 (Oral Decision at 39).

appeal, Huang incorrectly states that the *IJ* relied on *Matter of C-C-*[5] and attacks the conclusion reached in *Matter of C-C-* by claiming that new documents call *Matter of C-C-* into question. Pet'r Br. at 38-39. Huang observes that the Second Circuit has remanded a case to the BIA based on documents, allegedly produced by the Fujian Province Department of Family Planning, that indicate foreign-born children *would* be considered as part of China's population-control policies. Pet'r Br. at 38-39 (citing *Shou Yung Guo v. Gonzales*, 463 F.3d 109 (2d Cir. 2006), and *Jin Xiu Chen v. U.S. Dep't of Justice*, 468 F.3d 109 (2d Cir. 2006)).

Huang's reliance on these cases is misplaced. First, Huang has never maintained that Fujian Province is her home or that she would be returned to that province,[6] whereas Changle City, Fujian Province, was the "home city" of the petitioner in *Jin Xiu Chen*. *Jin Xiu Chen*, 468 F.3d at 110. Further, upon the Second Circuit remand's in *Shou Yung Guo*, the BIA considered the most recent evidence and concluded that "children born abroad are 'not . . . counted' for birth planning purposes when the parents return to China." *In re S-Y-G-*, 24 I. & N. Dec. 247, 255 (BIA 2007); *see also* II.C.2 *supra*. Perhaps most important, however, is that the BIA, in citing *Matter of C-C-*, acknowledged Huang's submission of the Aird Affidavit and the Fujian documents and relied on its own previously stated reasons in denying her motion to remand. We therefore hold that the BIA did not abuse its discretion in denying Huang's motion to remand to allow her to reapply for asylum on the basis of the alleged birth in 2006 of her second child with Fong, and we **DENY** review on that basis.

### E. The BIA's Denial of Huang's Motion to Remand for Adjustment of Status

The final section of Huang's brief, which amounts to slightly less than one full page of text, argues that the BIA abused its discretion by denying her motion to remand to allow her to apply for adjustment of status based on her marriage to Fong, a U.S. citizen. Pet'r Br. at 50-51. Even assuming that we view this argument as properly raised, we hold that Huang clearly fails to demonstrate that the BIA abused its discretion in denying her motion to remand for adjustment of status.

Huang notes that under *Matter of Velarde-Pacheco*, 23 I. & N. Dec. 253 (BIA 2002), the BIA may, in certain circumstances, grant a motion to reopen filed by an alien who has married a United States citizen after the immigration authorities have commenced removal proceedings. Pet'r Br. at 50. *Velarde* sets forth a multi-factor test for relief that Huang simply recites before declaring that "[t]his case meets all *Velarde* factors, compelling reason to grant reopening based on bona fides of the marriage, timely filed and not number-barred motion." Pet'r Br. at 51.

The government counters that the BIA correctly held that several of the *Velarde* factors are not satisfied in this case, including that the government *does* oppose the relief on an acceptable ground (namely, that she committed marriage fraud). Resp't Br. at 42-44; J.A. at 3 (BIA Decision). Further, a fatal flaw to Huang's argument is her failure to acknowledge that *Velarde* did *not* compel relief when an alien meets the listed factors and instead decided that the issue was a *discretionary* matter. *Velarde*, 23 I. & N. Dec. at 257 ("Immigration Judges may still deny motions to reopen . . . in the exercise of discretion."). Indeed, in *Velarde* the BIA emphasized that its decision "does not

---

[5] In fact, it was the BIA that relied on *Matter of C-C-*. J.A. at 3. Huang's mistaken claim that the IJ relied on the case thus produces the erroneous impression that the BIA abused its discretion by failing to remand her case to the IJ in a situation in which the IJ relied on a possibly suspect ground. The IJ could not have relied on *Matter of C-C-* because the IJ's decision predates the issuance of that opinion.

[6] On her asylum application, Huang stated that she had lived in Xinxiang, a city in the province of Henan. J.A. at 846 (Asylum App. at 4); RANDOM HOUSE UNABRIDGED DICTIONARY 2196 (2d ed. 1993); *see also* J.A. at 574 (Huang, Hr'g Tr. at 199) (stating that she is from the "Hunan [sic] province").

require Immigration Judges to reopen proceedings . . . in every case in which the respondent meets all five of the aforementioned factors." *Velarde*, 23 I. & N. Dec. at 257.

In light of her previous fraudulent marriage and the government's opposition to her motion on that ground, Huang has not demonstrated that the BIA abused its discretion in denying her motion to remand for adjustment of status. We **DENY** review of the BIA's denial of remand on this ground.

## F. Huang's March 2008 Motion to Remand to the BIA and Supplement the Record

On March 11, 2008, Huang filed a motion in our court to remand her case to the BIA and to supplement the record with various materials, claiming that subsequent translations of certain Chinese government documents demonstrate that China's family-planning policies are more coercive than previous reports indicated and that this new information undermines the BIA's decision in this case. The government opposes Huang's motion on several grounds: that Huang failed to exhaust her available administrative remedies, that Huang failed to raise this issue in her opening brief, and that the evidence is not in the administrative record. We deny Huang's motion for several reasons.

First, we observe that we lack a statutory basis for remanding her case or for supplementing the record. The INA provides that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). Federal regulations establish a procedure by which to bring new evidence before the BIA. 8 C.F.R. § 1003.2(c). In *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 264-65 (2d Cir. 2007), the Second Circuit observed that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, "explicitly revoked our authority to remand to the BIA for the taking of additional evidence." (citing 8 U.S.C. § 1252(a)(1)).

The Second Circuit's opinion *Xiao Xing Ni* supports the denial of Huang's motion. In *Xiao Xing Ni*, the Second Circuit noted that in *Tian Ming Lin v. U.S. Dep't of Justice*, 473 F.3d 48 (2d Cir. 2007), another panel had expressed in dicta that courts of appeals have an "'inherent equitable power to remand cases to administrative agencies for further proceedings in sufficiently compelling circumstances.'" *Xiao Xing Ni*, 494 F.3d at 265 (quoting *Tian Ming Lin*, 473 F.3d at 52). In *Xiao Xing Ni*, the court considered whether any inherent equitable power to remand existed and, while "declin[ing] to forswear categorically all inherent power to remand for additional fact-finding," the court "conclud[ed] that the exercise of such an inherent power is not warranted if, as here: [i] the basis for the remand is an instruction to consider documentary evidence that was not in the record before the BIA; and [ii] the agency regulations set forth procedures to reopen a case before the BIA for the taking of additional evidence." *Xiao Xing Ni*, 494 F.3d at 269. Reasoning that under those circumstances, the BIA would then be able to evaluate the new evidence in the first instance, and, if the BIA denied the motion, "a petition may be taken to this Court, and this Court can grant relief—without calling upon extraordinary inherent powers." *Id.* at 270. The circumstances that the Second Circuit identified as rendering inappropriate the exercise of an inherent equitable power are present in this case,[7] and we adopt the Second Circuit's analysis in *Xiao Xing Ni*[8] and therefore we **DENY** Huang's motion to remand to the BIA and supplement the record.

---

[7] In her Reply to the Government's Response to her motion, Huang asserts that she *has* filed a motion with the BIA to reopen the proceedings, and includes an attachment purporting to show this. Reply at 1; Attachment A to Reply.

[8] We do emphasize that, similar to the Second Circuit in *Xiao Xing Ni*, our decision to deny Huang's motion to remand in these circumstances does not "forswear categorically" the existence of an inherent equitable power to remand to the BIA in an appropriate case. *See Xiao Xing Ni*, 494 F.3d at 269.

## III.  CONCLUSION

For the reasons discussed above, we **DISMISS** Huang's petition for review insofar as it seeks review of the denial of her application for asylum.  In all other respects, we **DENY** Huang's petition for review and her motion to remand to the BIA and supplement the record.