NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0770n.06
Filed: December 18, 2008

No. 07-4353

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

XIAO REN ZHUANG,                                       )
                                                       )
        Petitioner,                                    )        ON PETITION FOR REVIEW
                                                       )        OF A DECISION OF THE
        v.                                             )        BOARD OF IMMIGRATION
                                                       )        APPEALS
MICHAEL B. MUKASEY, Attorney General,                  )
                                                       )
        Respondent.                                    )
                                                       )

BEFORE: ROGERS, SUTTON, and McKEAGUE, Circuit Judges.

        ROGERS, Circuit Judge. Xiao Ren Zhuang petitions for review of the decision of the Board

of Immigration Appeals, which affirmed the decision of an immigration judge to deny Zhuang's

application for asylum, withholding of removal, and protection under the Convention Against

Torture ("CAT"). Zhuang filed his application for asylum claiming that Chinese government

officials forced his wife to undergo an abortion and attempted to force him to undergo sterilization

before he fled the country. The IJ denied asylum because Zhuang did not file his application within

a year of entering the United States. The IJ denied withholding of removal and CAT protection

because she found that Zhuang's story lacked consistency and credibility. This court does not have

jurisdiction to review the IJ's decision to deny asylum where the petitioner's application was

untimely. Moreover, the IJ's finding that Zhuang lacked credibility, a finding fatal to Zhuang's other claims, is supported by substantial evidence. We therefore deny the petition.

## I.

Zhuang is a Chinese citizen who seeks to stay in this country because of past (and fear of future) persecution under China's family planning policy. Zhuang testified at his asylum hearing that he and his wife married when they were below the legal age of marriage, so the Chinese government did not issue them a marriage certificate. Shortly after Zhuang's wife gave birth in September 1991, government officials requested that Zhuang pay a fine for the birth of his child. Although Zhuang initially resisted, he decided to pay the fine in April 1992 so that he and his wife could receive a marriage certificate and so that their son could receive a birth certificate and be legally registered as a member of their household.

Zhuang testified that after he and his wife received their marriage certificate, local government officials asked his wife to have an intrauterine device inserted, which she did on April 15, 1992. However, the IUD was somehow dislodged and Zhuang's wife learned that she was again pregnant in September 1994. Zhuang and his wife wanted to carry the child to term, so they arranged for Zhuang's wife to hide at her sister's home. On November 21, Zhuang received a call from his sister-in-law, letting him know that his wife had been discovered. When Zhuang arrived at his sister-in-law's home, he found that local officials had taken his wife to the hospital. When he arrived at the hospital, an abortion had already been performed. At that time, another IUD was inserted. Zhuang's wife alleged these same facts in a letter supporting Zhuang's asylum application.

Zhuang further testified at his hearing that, in 1996, his company fired him for refusing to be sterilized. He stated that after his company asked him to submit to sterilization, he went to the hospital to have the procedure; however, he changed his mind and surreptitiously left the hospital. Zhuang recounted the facts in a slightly different way in his asylum application. He claimed that family planning officials came to his home in January 1996 to take him for a vasectomy. Not wishing to be sterilized, he fled to another city. His company pressured him to come back for the procedure or risk dismissal. He was subsequently dismissed. His wife's letter stated the facts more generally, saying that in 1996 the family planning office unsuccessfully attempted to get her husband to submit to sterilization.

Zhuang testified at the hearing that after he was fired from his company, he went to work for several months in the city of Shen Chen. In August 1997, he was able to purchase airfare to Canada. Zhuang lived in Canada for a little over a year, during which time he filed an unsuccessful asylum application. Sometime before Thanksgiving 1998, Zhuang heard that his mother was ill and decided to return to China. Zhuang testified that he was imprisoned for one week and fined upon arrival in Shanghai, an incident he neglected to mention in his asylum application. Zhuang further testified that, after returning to China, he worked in Shen Chen for five years performing temporary labor. His asylum application also indicated a lengthy residence in that city. Zhuang's official residence throughout this time, as evidenced by his asylum application and by government documents issued in March 2002, was Nanyu village. However, Zhuang testified that he only visited his home village for a brief time and otherwise resided in Shen Chen after his return to China in 1998.

Zhuang wrote in his asylum application that, while he was working in Shen Chen, a friend found a way for him to come to America. Zhuang left China on March 20, 2002, and traveled through Hong Kong, Singapore, and Mexico before arriving in Houston on April 1, 2002. On cross-examination, Zhuang testified that he climbed over a mountain to get from Mexico to Houston, which testimony prompted the IJ to observe that there are no mountains near Houston. Zhuang explained on redirect examination that he and some others took a bus to a hotel near the border, walked for two days to reach the border, then took a four to five hour car trip to reach Houston. Zhuang also apparently passed through New York before he was eventually apprehended by U.S. officials in Detroit in September 2002.

On October 21, 2002, Zhuang was served with a Notice to Appear, which alleged that he was not a citizen or national of the United States, that he arrived in the U.S. on or about April 1, 2002, and that he had not been admitted or paroled by an Immigration Officer. Zhuang appeared before an IJ on October 24. At that time, Zhuang indicated that he wanted to find a lawyer before proceeding, and the IJ gave him until December 5 to do so. The IJ also conducted a bond hearing, at which he concluded that Zhuang was a flight risk and raised his bond from $10,000 to $40,000. Although the IJ reserved the issue for a later hearing on the merits, he mentioned in his decision that he found Zhuang's story to be inconsistent and incredible. The IJ stated that he had grave concerns about the merit of any future claim for asylum, noting that Zhuang had yet to make an affirmative application for asylum despite having resided in the country for six months and that Zhuang did not articulate any basis for an asylum claim.

Zhuang appeared with counsel on December 5, 2002. At that time, Zhuang admitted all the grounds for removability set forth in the Notice to Appear. Zhuang also indicated that he wished to seek asylum, withholding of removal, and relief under the CAT. The IJ gave Zhuang until January 21, 2003, to file all applications or else to abandon the claims. Zhuang filed his asylum application in July 2003. He appeared before a different IJ on July 9, 2003. At that hearing, the IJ noted that the asylum application might be untimely. The merits hearing, which took place before a third IJ, did not occur until March 6, 2006.

At the merits hearing, the IJ made two findings that ultimately led to an order of removal. First, the IJ found that Zhuang's application for asylum was untimely, having been filed more than a year after he entered the United States. For this reason, Zhuang did not establish eligibility under 8 U.S.C. § 1158 (a)(2)(B). Second, the IJ found that Zhuang's testimony was not credible. The IJ listed several reasons for her finding.

First, the IJ focused on the fact that Zhuang omitted his residence in Canada and his unsuccessful asylum application there from his application for asylum in the United States. (The IJ's analysis here is puzzling given that the copy of Zhuang's application contained in the record makes reference to his arrival in Canada on August 12, 1997, and his subsequent application for political asylum. Moreover, his own attorney elicited the information about Zhuang's time in Canada at the very beginning of his testimony, which indicates that Zhuang was not anxious to hide the fact that he spent a year in Canada or that he applied for asylum there.)

Second, the IJ focused on the fact that Zhuang lived in China for four to five years after returning from Canada without undergoing any persecution. Key to this issue was the IJ's belief that Zhuang never established that he lived anywhere other than his own village during those years. The IJ mentioned that Zhuang's household registry and identity card, both issued in March 2002, list his residence as Nanyu village. The IJ asserted that if Zhuang was able to live in China for four years unharmed—and even to obtain documentation from the very authorities that he claimed wanted to persecute him—the likelihood of persecution in the future was small.

Third, the IJ questioned the validity of the evidence that Zhuang's wife was forced to undergo an abortion and that Zhuang was at risk of forced sterilization. The IJ noted that Zhuang submitted two abortion certificates while, with no explanation of the contradiction, his story only made reference to one abortion. (Zhuang later addressed this issue in a motion to this court. He claims that one of the documents was mistranslated to read "abortion operation" when it should have read "IUD insertion." With this alteration, Zhuang's testimony and documentation would be consistent with each other.) The IJ also observed that Zhuang wrote in his application that the family planning officials came to his home to take him to be sterilized, while he testified at the hearing that officials at his workplace pressured him to have the procedure. Additionally, the IJ questioned Zhuang's documents—both the ones he produced and the ones he failed to produce. She noted that the State Department's Profile of Asylum Claims and Country Conditions for China advises that our government is unaware of the "abortion certificates" often submitted with asylum applications, and that the only similar documents known to be legitimate are certificates issued after voluntary

abortions.  The IJ also mentioned that Zhuang claimed to have received written notification from his company regarding a vasectomy, but he was unable to produce this notice.

Fourth, the IJ cited information in China's Country Reports Profile for the proposition that the U.S. government found that there were no forced abortions in the relevant part of China in the ten years leading up to 2004, and that doctors in the area say there have been no forced abortions or sterilizations since the late 1980s.  The State Department report contained in the record reads:

> According to the Fujian Provincial Family Planning Committee (FPFPC), there have been no cases of forced abortion or sterilization in Fujian in the last 10 years, but it is impossible to confirm this claim.  The FPFPC acknowledges that during the 1980s and early 1990s there were isolated cases of forced abortion and sterilization.  Since that time, the FPFPC asserts that it has insisted that all men and women who undergo surgical procedures provide informed, written consent before surgery.  Local physicians in contact with the U.S. Consulate General in Guangzhou report that they have not seen signs of forced abortions or sterilizations among their patients from Fujian and Guangdong Provinces since the 1980s.

The IJ quoted this passage selectively in her opinion.

The IJ made her credibility concern explicit when she said, "It is also noted that snakeheads [Chinese smugglers] have, in many cases, provided applicants for asylum the details and documents necessary to obtain relief."  According to the testimony of both Zhuang and his wife, Zhuang worked with Chinese smugglers in both his application for asylum in Canada and his application here.  The IJ noted that she saw critical, unresolved inconsistencies between his application and his testimony at the hearing, and she found that Zhuang failed to establish a credible claim for relief.

Zhuang appealed the decision to the BIA, and the BIA issued a one-page, per curiam opinion adopting the IJ's decision.  Zhuang then petitioned this court to review the BIA's decision.  Because

Zhuang allegedly discovered the mistranslation of one of his documents subsequent to his appeal before the BIA and his petition to this court but prior to submitting his brief, Zhuang now attempts to raise an ineffective assistance of counsel claim for the first time before this court. As part of this effort, Zhuang has filed a complaint against his previous attorney on two grounds: (1) that his attorney failed to file Zhuang's asylum application within the one-year deadline or to preserve the issue of timeliness in Zhuang's appeal before the BIA, and (2) that the attorney did not catch a mistranslation in one of the key pieces of documentary evidence, thus casting serious doubt on Zhuang's credibility. Zhuang asks the court to take judicial notice of the mistranslation and to overturn the IJ's order of removal. Alternatively, he asks the court to remand the case to the BIA.

## II.

### A.

The issues surrounding the potential mistranslation of one of Zhuang's documents are not properly before this court. Zhuang asks the court to take judicial notice that a document in the record that reads "abortion operation" should instead read "IUD insertion." He then goes on to urge this court to grant relief based on the newly-admitted evidence, or to remand the case to the BIA for further proceedings in light of the alleged mistranslation. We need not consider the propriety of taking judicial notice in this situation, because the only point of doing so would be to allow the court to consider two issues that are not properly before it. They are (1) whether the alleged mistranslation calls into question the IJ's adverse credibility determination and (2) whether Zhuang's counsel performed ineffectively at the original hearing and the BIA appeal. We do not consider either of

these issues, because they were not raised before the BIA. "[O]nly claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal." *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004). We do not take the exhaustion requirement to preclude arguments that merely give additional support to claims that were raised before the BIA. However, Zhuang's arguments to the BIA regarding the IJ's adverse credibility finding did not preserve, or even mention, a claim that the IJ's finding was undermined by translation errors. Nor has Zhuang yet raised an ineffective assistance of counsel claim before the BIA, although the BIA provides a mechanism for him to do so.

Alternatively, Zhuang asks the court to supplement the record and remand the case for further proceedings in light of the supplementation, but such action would be improper. As we noted in a similar situation, "we lack a statutory basis for remanding [such a] case or for supplementing the record." *Huang v. Mukasey*, 523 F.3d 640, 656 (6th Cir. 2008) (addressing petitioner's request that her case be remanded in light of new translations of certain Chinese government documents). Zhuang bases his request on the fact that he has begun the process of reopening his case before the BIA by filing a complaint against his former attorney, notifying the attorney of that complaint, and swearing out an affidavit enumerating his previous attorney's various faults. *See Matter of Lozada*, 19 I. & N. Dec. 637, 639 A-31025184 (BIA 1988) (setting out the requirements for filing a motion to reopen to consider a claim of ineffective assistance of counsel). But the fact that Zhuang wishes to pursue an ineffective assistance of counsel claim below does not empower this court to take any action, including remand, on that claim now. The proper course of action is for Zhuang to file a

motion to reopen with the BIA. *See* 8 C.F.R. § 1003.2(c)(1); *Melaj v. Mukasey*, 282 F.App'x. 354, 361 (6th Cir. 2008). This court could then consider the BIA's decision on appeal *after* the BIA had the first chance to determine whether reopening was appropriate and, if so, to consider whether the evidence of ineffective assistance, including the evidence of mistranslation, had merit. *See Huang*, 523 F.3d at 656. We therefore consider only that portion of Zhuang's petition which seeks review of the IJ's decision based on evidence in the record.

**B.**

To the extent that Zhuang's arguments relate to his asylum claim, as opposed to his withholding of removal and CAT claims, they are misplaced. Although the petitioner mentions the constitutional requirement of due process in deportation proceedings,[1] his arguments before the BIA and before this court focus entirely on refuting the IJ's adverse credibility finding. The IJ based her denial of asylum on untimeliness. This court does not have jurisdiction to review the denial of an asylum application for untimeliness when the petitioner seeks review based on "discretionary or factual questions" as opposed to "constitutional claims or matters of statutory construction." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).

**C.**

In contrast to the asylum claim, which failed on timeliness grounds, the withholding of removal and CAT claims failed because the IJ found Zhuang's account to be incredible. Because

---

[1] "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (citations omitted).

the BIA adopted the IJ's reasoning, this court reviews the IJ's decision directly to see if the BIA's decision should be upheld. *Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005). While it is possible to find fault with some of the IJ's bases for doubting Zhuang's credibility, the deferential standard of review justifies affirmance. The problems with the IJ's credibility findings are as follows. First, the IJ's statement that Zhuang omitted his residence and asylum application in Canada from his U.S. asylum application is contradicted by the record. Zhuang's application directly refers to both. Second, the IJ emphasized the fact that Zhuang's official documents stated that he lived in Nanyu village in the years before he traveled to the U.S., not in Shen Chen as he claimed. Yet State Department publications, on which the IJ otherwise relied for information about the situation in China, report that peasants in China cannot easily change their official residence from rural to urban areas, but that they often move to urban areas without obtaining official status. Third, the IJ mentioned the inconsistency between Zhuang's documentary evidence, which included two abortion certificates, and his testimony, which alleged only one abortion. While the fact that one of those certificates might have been mistranslated is not properly before the court, the IJ could have inquired into the inconsistency at the hearing and given Zhuang a chance to explain. Fourth, the IJ cited a State Department report for the proposition that forced abortions and sterilizations did not take place in Fujian Province during the relevant time period, but she cited the report selectively in order to draw a factual conclusion not fully supported by the text. These faults could call the accuracy of the IJ's determination into question.

However, the IJ also based the adverse credibility finding on the fact that Zhuang lived in China unharmed from 1998 to 2002, a fact which Zhuang does not contest and which undermines his claim that he would likely face persecution if deported. Additionally, the IJ based the finding on her suspicion that the story and the documents were provided to Zhuang by a Chinese smuggler. Zhuang's testimony and his wife's letter in support of his application indicate that he worked with such a person during the application process.

Looking at the record as a whole, the evidence adequately supports the IJ's conclusion that Zhuang's account lacked credibility. We review the IJ's factual determinations under the deferential substantial evidence standard, meaning we must "uphold the administrative decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole, and may reverse only if the evidence compels a different result." *Zoarab v. Mukasey*, 524 F.3d 777, 780 (6th Cir. 2008) (internal quotations and citations omitted). In the words of the statute, "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Under this standard of review, the IJ's adverse credibility determination stands.

Although we review the IJ's legal determinations de novo, *Zoarab*, 524 F.3d at 780, a factual finding that Zhuang lacks credibility is a sufficient basis to deny withholding of removal and protection under the CAT. To qualify for withholding of removal, Zhuang needed to show a "clear probability" that his "life or freedom would be threatened . . . on account of race, religion, nationality, membership in a particular social group, or political opinion" if he returned to China.

*Vasha v. Gonzales*, 410 F.3d 863, 875 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)).  To qualify

for protection under the CAT, Zhuang needed to show that "he would more likely than not be

subjected to torture after being deported" to China.  *Ceraj v. Mukasey*, 511 F.3d 583, 594 (6th Cir.

2007) (citing 8 C.F.R. § 1208.16(c)(2)).  Because we accept the IJ's finding that Zhuang's account

lacks credibility, Zhuang does not meet his burden of proof under either of these standards.  Zhuang

is therefore not entitled to relief through either withholding of removal or CAT protection.

**III.**

For the foregoing reasons, the petition for review is DENIED.