NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0535n.06

No. 08-4594

**FILED**
**Aug 04, 2009**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JIN ZHOU ZHENG,                                )
                                               )
          Petitioner,                          )
                                               )
v.                                             )          ON PETITION FOR REVIEW
                                               )          OF AN ORDER OF THE
ERIC H. HOLDER, JR., UNITED STATES             )          BOARD OF IMMIGRATION
ATTORNEY GENERAL,                              )          APPEALS
                                               )
          Respondent.                          )

BEFORE:    GILMAN and McKEAGUE, Circuit Judges; and SARGUS, District Judge.[*]

**McKEAGUE, Circuit Judge.** Jin Zhou Zheng, a citizen of China and a resident of the

United States, applied for withholding of removal under the Immigration and Nationality Act

("INA") and protection under the United Nations Convention Against Torture and Other Cruel,

Inhuman or Degrading Treatment or Punishment ("CAT"). When she submitted her application,

Zheng was married to a Chinese citizen who also resided in this country. The couple had two

children, both of whom were born in this country. Based on the fact that she had two children,

Zheng argued that she would be subject to forced sterilization if she were returned to China. The

Immigration Judge ("IJ") concluded that she had not provided sufficient evidence to support her

application and the Board of Immigration Appeals ("BIA") affirmed.

---

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District
of Ohio, sitting by designation.

On petition for review, we find that the BIA did not abuse its discretion.


**I**

Zheng was born in Fujian Province and lived there most of her life. She entered the United States without inspection in 1998. In August 2006, Zheng married a Chinese citizen residing in the United States. Her husband had earlier been denied asylum but granted voluntary departure in 1999; when Zheng filed her application, her husband had not yet departed from the United States. Zheng's counsel stated that his firm was considering filing a motion to reopen the husband's case.

The couple had two children born in the United States, a daughter (2000) and a son (2003). Zheng applied for withholding of removal in October 2006, claiming that she feared being sterilized if returned to China because she had two children. Specifically, she asserted that she wanted to have additional children, but that she feared being subject to forced sterilization in China under that country's population-control policies. She claimed that her sister had been forced to have an abortion and that she knew many people who were forced to undergo sterilization or abortion. Zheng subsequently stated that it was her cousin, not her sister, who had the abortion.

The IJ held a hearing on Zheng's application. Zheng was represented by counsel at the hearing and testified on her own behalf. The IJ questioned counsel whether Zheng's application included a claim of asylum because the application had been filed more than a year after Zheng had entered the country. The INA requires that an asylum claimant "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). This requirement is subject to exceptions

in cases when the alien "demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within" the one-year period. *Id.* § 1158(a)(2)(D). The IJ determined that the birth of Zheng's son in 2003 could not sustain a changed-circumstances finding because she waited three years after that birth before applying for asylum. Counsel clarified, "[W]hen we applied, we understood that it was for withholding." Appendix ("App.") 115.

Zheng included several documents with her application. One document, a letter from her father dated August 2006, stated in part that she would be forced to undergo sterilization if she was to return. Another document was referred to as a "Sterilization Notice" which Zheng alleged to have been issued by a committee from her hometown. The document stated in part, "You shall come to pay the penalty and under go the sterilization procedures according to the national birth control policy." App. 286. Other documents included various news reports about population-control policies in China and a transcript of a congressional hearing from 1998. The IJ also accepted into evidence the U.S. State Department's 2006 Country Report on Human Rights Practices for China ("2006 Country Report") and its 2005 Profile of Asylum Claims and Country Conditions for China.

After hearing testimony from Zheng and reviewing the documents, the IJ issued an oral ruling. The IJ found that fear of forced sterilization or abortion in connection with coerced family planning constituted membership in a particular social group for purposes of the immigration laws. The IJ further found Zheng to be a credible witness. Yet, even with Zheng's generally credible testimony, the IJ denied her application. The IJ relied upon the 2006 Country Report, which stated

that the policies in force in Fujian Province did not require termination of pregnancy if a pregnancy violated population-control regulations, but instead imposed unspecified remedial measures. After reviewing the regulations pertaining to married couples who have children while living abroad, the IJ found that Zheng had not shown that it was more likely than not that she would be subject to forced sterilization or other persecution or torture were she to return to Fujian Province.

The BIA affirmed on appeal. As to whether Zheng timely made a claim for asylum, the BIA noted that her counsel conceded before the IJ that she was ineligible for asylum and, in any event, her argument that her husband's application provided some basis for finding that her application was timely was, in the words of the BIA, "baseless." App. 2. It concluded that there was "no reason to disturb the Immigration Judge's pretermission of [Zheng's] asylum application." *Id.* As to the claims for withholding of removal, the BIA agreed with the IJ that they should be denied:

> We are in agreement with the Immigration Judge's conclusion that [Zheng] has not presented any objective evidence to support a finding that China has a national policy of forced sterilization of returnees with foreign born children, regardless of where the children or spouse currently reside (I.J. at 6-9). *See Matter of J-W-S-*, 24 I&N Dec. 185 (BIA 2007) (finding, inter alia, that although some sanctions may be imposed pursuant to local family planning policies in China for the birth of a second child abroad, the applicant failed to provide evidence that such sanctions in Fujian Province or Changle City would rise to the level of persecution). The respondent has not raised any arguments on appeal that would persuade us to find otherwise. Accordingly, we find that the respondent failed to establish that she will more likely than not be persecuted or tortured in China. 8 C.F.R. §§ 1208.16(b),(c)(2).

App. 3.

Zheng petitioned this court for review.

**II**

- 4 -

## A.  Asylum

Zheng argues that her claim for asylum was not untimely under the one-year rule because she was dependent upon her husband's asylum application prior to submission of her own application. In her brief to the BIA, she argued that this provided "some basis" for her to have been deemed to have filed the claim within one year of her last arrival in the United States. App. 12.  Yet, her counsel conceded before the IJ that any claim for asylum would be barred as untimely.  The IJ subsequently treated the application as one for withholding, not asylum, and the BIA affirmed.

We have a limited role in reviewing the BIA's decision on whether a claim was timely.  We do not have jurisdiction to review any discretionary or factual determination regarding whether changed or extraordinary circumstances exist to excuse an otherwise untimely claim for asylum, although we do have jurisdiction to review constitutional or statutory-construction issues. 8 U.S.C. § 1158(a)(3); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006).  Zheng's argument that her asylum claim was timely does not raise constitutional or statutory-construction issues. Accordingly, we review Zheng's claims as ones for withholding of removal under the INA and the CAT, not asylum.

## B.  Withholding of Removal

The BIA did not adopt *in toto* the IJ's reasoning, but rather stated that it was in agreement with the IJ's conclusion that Zheng had failed to provide sufficient evidence to warrant withholding of removal.  When the BIA does "not summarily affirm or adopt the IJ's reasoning and provide[s] an explanation for its decision, we review the BIA's decision as the final agency determination." *Ilic-*

*Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007). In reviewing the decision of the BIA, we must treat "administrative findings of fact [as] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

"We review the BIA's decision on a request for withholding of removal under the same standard regardless of whether the request was made pursuant to the INA or the CAT." *Almuhtaseb*, 453 F.3d at 749. "To prevail on a petition for withholding of removal under the INA, or on a petition for withholding of removal under the CAT, an alien must show that there is a 'clear probability' that she would be subject to persecution, for the INA, or to torture, for the CAT . . . ." *Kouljinski v. Keisler*, 505 F.3d 534, 544 (6th Cir. 2007). "This showing of 'clear probability' requires more than that needed to demonstrate refugee status, which requires only a 'well-founded fear of [future] persecution.'" *Id.* (quoting 8 C.F.R. § 1208.13(b)). The regulations define the "clear probability" standard as requiring that "[a]n applicant who has not suffered past persecution . . . establish that it is more likely than not" that she would be persecuted or tortured on the basis of one of the protected grounds upon her return. 8 C.F.R. § 1208.16(b)(2).

In stating that Zheng had failed to provide sufficient evidence that China had a national policy of forced sterilization of returnees with foreign-born children, the BIA cited its published decision, *In re J-W-S-*, 24 I&N Dec. 185 (BIA 2007). In that case, the BIA considered the claim of a Chinese citizen who sought asylum from China's population-control policies and who relied on documentary evidence much like Zheng's. After reviewing the evidence, the BIA found:

> The evidence of record suggests that if a returnee who has had a second child while outside of China is penalized at all upon return, the sanctions would be fines or other

- 6 -

economic penalties. Enforcement efforts resulting in moderate economic impact would not, in general, prove a well-founded fear of future persecution.

*Id.* at 191. The BIA concluded, "[T]he evidence of record does not demonstrate that the Chinese government has a national policy of requiring forced sterilization of parents who return with a second child born outside of China." *Id.* at 192.

As a panel of this court recently noted, "Other courts have declined to vacate similar orders of the BIA involving similarly situated petitioners." *Yang Lin v. Holder*, No. 08-3138, slip op. at 15 (6th Cir. Apr. 9, 2009) (unpublished) (citing *Huang v. Mukasey*, 523 F.3d 640, 654 (6th Cir. 2008); *Song Wang v. Keisler*, 505 F.3d 615, 622-23 (7th Cir. 2007) (affirming the BIA's determination that applicants did not establish there would be any penalty for United States citizen children, even if applicants were to return to PRC with their children); *Aie Wu v. Mukasey*, 273 F. App'x 12, 14 (2d Cir. 2008) (unpublished) (referring to the 2007 State Department Report in finding "Chinese regulations stipulate that children born overseas are not counted for purposes of administering the family planning policy")).

Zheng makes several arguments that we find unpersuasive. She contends that even if there is evidence that Chinese authorities are refraining at the moment from pursuing forced sterilizations, the authorities "may tighten up at any moment without warning." Pet. Br. at 16. This is conjecture without any factual basis in the record. She also takes issue with the IJ's reliance on State Department reports because, she asserts, the reports are flawed and inconsistent. In *In re J-W-S-*, the BIA relied upon the same State Department country report and a subsequent country profile in affirming denial of relief. 24 I&N Dec. at 190-91. This court has upheld numerous decisions of the

BIA based in part or in whole on similar State Department reports. *See, e.g.*, *Huang*, 523 F.3d at 652-54; *Hu v. Holder*, 318 F. App'x 348 (6th Cir. Mar. 19, 2009) (unpublished). Finally, Zheng argues that the IJ and the BIA failed to distinguish between forced abortion and forced sterilization. Assuming the distinction is material within the context of Zheng's application, our review of the record confirms that the IJ and BIA both treated Zheng's application as one based on forced sterilization.

Like the petitioner in *In re J-W-S-*, Zheng has failed to establish with record evidence that U.S.-born children will be counted under China's one-child policy, or that the parents of multiple U.S.-born children have any objective reason to fear they will be persecuted or tortured. While there is some evidence that Zheng may face economic penalties upon her return, there is no evidence that such penalties will be so draconian as to rise to the level of persecution or torture.

## III

Accordingly, for the reasons set forth above, we **DISMISS** Zheng's petition insofar as it seeks review of the BIA's decision as to whether she timely made a claim for asylum. In all other respects, we **DENY** Zheng's petition.