NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0446n.06

No. 09-3438

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jul 21, 2010**
LEONARD GREEN, Clerk

| | |
|---|---|
| MING JUAN CHEN, )<br><br>        Petitioner,        )<br>                                    )<br>                                    )<br>v.                                  )<br>                                    )<br>ERIC H. HOLDER, JR., Attorney General,  )<br>                                    )<br>        Respondent.                 ) | ON PETITION FOR REVIEW FROM THE BOARD OF IMMIGRATION APPEALS<br><br>OPINION |

BEFORE:     NORRIS, MOORE, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Petitioner Ming Juan Chen appeals the decision of the Board of Immigration Appeals.  She argues that: (1) the Board erred in deferring to the Immigration Judge's adverse credibility finding; (2) the Board erred in adopting the Immigration Judges's finding that she would not face sterilization or be forced to undergo an abortion upon her return to China; (3) she was denied due process based on her attorney's ineffective assistance; and (4) she was denied procedural due process.  However, we are not persuaded and, consequently, we **DENY** her petition.

## I.  BACKGROUND

Chen is a native and citizen of the People's Republic of China.  She is a native of Changle City in the Fujian Province.  According to Chen's testimony, in 1999 or early 2000, a mutual friend introduced Chen to Tan Trung Le, a naturalized U.S. citizen.  Le and Chen begin to talk on the phone, and eventually met in person after a ten day visit by Le to China.  After six months, and

continued phone conversations, Le proposed, Chen accepted, and on September 3, 2000, Chen

entered the United States on a K-1 fiancé visa. Chen did not marry Le as required by her visa and

stayed beyond the authorized period. After Chen's engagement ended, she moved to Ohio, and took

a job at a restaurant there. Chen entered into a relationship with a co-worker and they had two

children: one boy and, a year and three months later, a girl. After the birth of her first child in

September 2002, a friend gave Chen a bible, which she started to read. After the birth of her second

child, Chen's relationship with the father ended. In October 2006, after being encouraged by a

friend, Chen got to know a bible teacher and started regularly attending meetings of the Jehovah's

Witnesses.

On November 20, 2006, Chen appeared before the Immigration Judge, and requested asylum,

withholding of removal, protection under the CAT and, in the alternative, voluntary departure. The

Immigration Judge scheduled the case for an individual hearing. On July 26, 2007, Chen had an

individual hearing, at which her application for asylum, withholding of removal, and protection

under the CAT was denied by the Immigration Judge, as was her request for voluntary departure.

Chen appealed the decision of the Immigration Judge. Chen's appeal to the Board was dismissed

on March 20, 2009.

## II. ANALYSIS

If the Board adopts the Immigration Judge's reasoning and supplements the Immigration

Judge's opinion, then the Board's supplemented opinion becomes the basis for review. *Zhao v.*

*Holder*, 569 F.3d 238, 246 (6th Cir. 2009) (citation omitted). However, "[w]here the BIA adopts

the Immigration Judge's reasoning, the Court reviews the Immigration Judge's decision directly to

determine whether the decision of the BIA should be upheld on appeal." *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007).

This court reviews factual findings and credibility determinations for substantial evidence. *Zhao*, 569 F.3d at 247 (noting that "[f]acts relevant to credibility determinations as applied to withholding of removal and relief under the CAT are reviewed under this same standard"). Under this standard, we will uphold the Board's determinations as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 247 (citation omitted). Furthermore, "the court may not reverse the Board's determination simply because we would have decided the matter differently" but, rather, the Board's findings of fact are "conclusive" unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (citations omitted). This court reviews legal conclusions de novo, but "it must defer to the BIA's reasonable interpretations of the INA." *Id.* (citations omitted); *see also INS v. Elias Zacarias*, 502 U.S. 478 n.1 (1992) ("To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it – and also compels the further conclusion that Elias-Zacarias had a well-founded fear that the guerrillas would persecute him because of that political opinion.").

To be eligible for withholding of removal under the INA, an alien must establish that "the alien's life or freedom would be threatened in [the proposed country of removal] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). This requires the alien to establish a "clear probability of persecution"

which, if the applicant has not suffered past persecution,[1] requires the alien to establish that "it is more likely than not that the alien would be persecuted" on the basis of one of the protected grounds. *Fang Huang v. Mukasey*, 523 F.3d 640, 651 (6th Cir. 2008) (quoting 8 C.F.R. § 1208.16(b)(2)). In the context of forced sterilization and forced abortion, a person who has a well founded fear that "he or she will be forced to undergo such a procedure or [will be] subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42).

Similarly, to prevail on a petition for withholding of removal under the CAT, the "burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2) (noting that the "testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration"); *Kouljinski*, 505 F.3d at 544. In making this determination, "all evidence relevant to the possibility of future torture shall be considered" which includes:

> (i) Evidence of past torture inflicted upon the applicant;
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
> (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3).

### 2. Adverse Credibility Finding

---

[1]The Immigration Judge noted that Chen conceded that she had not suffered past persecution, and Chen does not present any evidence or argument to the contrary. (A.R. 27, 66.)

Chen first challenges the adverse credibility determination of the Board and the Immigration Judge. The REAL ID Act of 2005, which applies to Chen's petition, changed the standard for credibility determinations, stating that those determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *Amir v. Gonzales*, 467 F.3d 921, 925 (6th Cir. 2006) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). Concerning credibility determinations in general, 8 U.S.C. § 1158(b)(1)(B)(ii)-(iii) provides that:

(ii) Sustaining burden

The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

(iii) Credibility determination

Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.

*See also* 8 U.S.C. § 1231(b)(3)(B) (extending these requirements to withholding of removal claims); 8 U.S.C. § 1229a(c)(4)(B)-(C) (extending nearly identical language to other applications from relief for removal, including applications under the CAT).

The Immigration Judge found that Chen's testimony regarding her involvement with Christianity and the Jehovah's Witnesses was not credible. The Immigration Judge noted that Chen displayed little knowledge of either Christianity in general or of the particular tenets of the Jehovah's Witnesses. (A.R. 4, 64.) The Immigration Judge found this surprising since Chen claimed to have been reading a bible for nearly five years and to have been involved on a regular and somewhat intensive basis with a Jehovah's Witnesses' congregation for over eight months. Moreover, the Immigration Judge was concerned that Chen claimed that she became a Christian in October of 2006, well after being placed into removal proceedings and the same month that Chen was notified of her first immigration hearing. (A.R. 4, 64.)[2] The Immigration Judge also found Chen's testimony was not credible based on a number of factors. In particular, he found that Chen's testimony was at odds with the documents that she filed and with the testimony of other witnesses. The Immigration Judge noted that Chen's asylum application stated that her house was demolished, but Chen's sister (who lived in the house) and her father, testified that the house was not demolished; Chen's sister testified that only the front door was kicked in. The Immigration Judge also noted that Chen testified that

---

[2]The Immigration Judge also questioned Chen's credibility, as well as her father's credibility, because Chen's father initially testified that Chen had no religion, then turned in the witness stand, looked at his daughter, who mouthed some words, and then he said that she "believed in Jesus Christ." (A.R. 77.) The Immigration Judge remarked that this testimony was obviously coached and, as far as Chen's father was concerned, not true. (A.R. 62.)

when her future fiancé, Le, came to China for ten days and visited with her, she never saw him smoke. Chen testified that Le was a chain smoker and that this was one of the main reasons that their relationship was not successful in the United States. The Immigration Judge found that it was not believable that a chain smoker like Le would not smoke in her presence during his visit.[3]

We find that the Board and the Immigration Judge based their adverse credibility determinations off of multiple inconsistencies, as they are entitled to under the REAL ID Act, and we are not compelled to conclude that Chen's testimony was credible. Consequently, we find that the adverse credibility finding was supported by substantial evidence.

### 3. Chen's coercive family planning practices claims

Chen also argues that she would face coercive family planning practices on her return to China, since she has had two children outside of wedlock, and the first child was a boy. The Board deferred to the Immigration Judge's findings concerning her claims based on a fear of coercive family planning practices. On appeal, Chen argues that she has an objectively reasonable fear of persecution because: (1) she is a single mother of two children born less than two years apart; (2) her first child is a boy. (Petitioner's Br. at 15-19.) In particular, Chen distinguishes her case based on the fact that she is a *single* mother of two children and because she claims that she established that

---

[3]The Board deferred to the Immigration Judge's findings concerning her claims based on a fear of coercive family planning practices, and those findings were based, in part, on the Immigration Judge's credibility assessment. However, regarding Chen's claims based on her alleged conversion the Board agreed that Chen's claims were suspect and noted that: (1) Chen knew little about the beliefs of Jehovah's Witnesses or about how their beliefs differed from other Christian denominations; and (2) it was suspicious that Chen claimed to have converted to Christianity in October 2006, well after being placed into removal proceedings, and "coincidentally" the same month that she was notified of her first immigration hearing.

there are population control policies in her province. (*Id.*) Because of her actions, she claims that she faces penalties – including forced insertions of IUDs, forced abortions, fines that could amount to ten times her annual salary, threats and/or destruction of property, mandatory submission to periodic physical exams, forced sterilization, and detention – which rise to the level of persecution. Other than her testimony, which was found to not be credible, Chen points to: (1) the 2006 Country Reports; (2) documents and testimony provided by her father;[4] and (3) her sister's experience to support her claims. However, this evidence does not show that Chen, who had two children while in the United States, would be subject to coercive family planning practices on her return to China.

Initially, both the Board and this Court have rejected similar claims. In particular, the Board found in *In re C-C-* that the State Department Reports did not address "the application of China's family planning policy to women returning to that country with children born abroad." 23 I&N Dec. 899, 903 (BIA 2006). Furthermore, the Board noted that the Country Reports stated that central government policy "formally prohibits the use of physical coercion to compel persons to submit to abortion or sterilization," although the Board noted that, "some reports of physical coercion to meet birth targets continued." *Id.* Based on these concerns, the Board concluded that the respondent in that case could not even make out a prima facie case for withholding of removal or protection under the CAT.[5]

---

[4]Chen's father testified that he went back to his village officials in China in November 2006 and talked with them and picked up documents describing family planning policies.

[5]The Board also found that an affidavit provided by a retired demographer was unpersuasive because it contained "no specific information on the application of the family planning policy to Chinese citizens returning to the Zhejiang province with children born abroad." *In re C-C-*, 23 I &

The Board reached a similar result in *In re J-W-S-*, 24 I&N Dec. 185, 195 (BIA 2007). There, the court found that all the evidence, including the 2006 Country Reports and local documents from the Fujian province, provided "insufficient evidence to indicate that the applicant has an objectively reasonable well-founded fear of sterilization on account of his opposition to China's one-child policy if he is removed to China." *Id.* at 188-95 (noting that the asylum application indicated that respondent "resided in Fujian Province, Changle City," but that he, like Chen, had not argued that he "would necessarily have to return to Fujian Province"). The Board also noted that the evidence suggested that, "if a returnee who has had a second child while outside of China is penalized at all upon return, the sanctions would be fines or other economic penalties. Enforcement efforts resulting in moderate economic impact would not, in general, prove a well-founded fear of future persecution." *Id.* at 191.

We have also noted in a similar case that:

> Like the petitioner in *In re J-W-S-*, Zheng has failed to establish with record evidence that U.S.-born children will be counted under China's one-child policy, or that the parents of multiple U.S.-born children have any objective reason to fear they will be persecuted or tortured. While there is some evidence that Zheng may face economic penalties upon her return, there is no evidence that such penalties will be so draconian as to rise to the level of persecution or torture.

*Jin Zhou Zheng v. Holder*, 339 F. App'x 592, 596 (6th Cir. Aug. 4, 2009) (involving a petitioner born in the Fujian Province, who gave birth to two children within three years in the United States, and argued that she faced coercive family planning practices upon her return to China); *see also*

---

N. Dec. at 901 (noting that it conflicted with the latest State Department reports and that it contained "no evidence that returnees have been sterilized").

*Yang Lin v. Holder*, 320 F. App'x 428, 435-37 (6th Cir. Apr. 9, 2009) (discussing *In re J-W-S-*, noting that any remand would be futile because Lin was similarly situated to the petitioner in *In re J-W-S-*, and the fact that he had two American-born children, in addition to a child born in China, did not make a material difference) (per curiam); *Fang Huang*, 523 F.3d at 654.

In this case, the 2006 Country Reports that Chen relies on contain the same language formally prohibiting (as national policy) the use of physical coercion to compel persons to submit to abortion or sterilization and noting that Fujian province requires unspecified "remedial measures" to deal with out-of-plan pregnancies, but (unlike other listed provinces), does not directly require the termination of pregnancy if the pregnancy violates provincial family planning regulations. The 2006 Country Reports also do not address the application of China's family planning policy to women, including single women like Chen, returning to that country with children born abroad.[6] Consequently, these reports do not show that Chen, returning to China with two children born in the United States, would be subject to coercive family planning practices. The fact that she gave birth as a single woman does not change this analysis since that, like the birth of her children, took place while she was living abroad.

---

[6]The 2006 Country Reports noted that: "Reports of forced sterilizations and abortions, *in violation of the national law*, continued to be documented in rural areas. During the year officials in Chongqing municipality and in Fujian Province reportedly forcibly sterilized women." (A.R. 228 (emphasis added).) It appears that these actions were unauthorized.

In addition, the Immigration Judge found that the documents produced by Chen's father, as well as the testimony of Chen and her father, were not credible.[7] The Immigration Judge's finding that the documents from Chen's father were not credible was supported by substantial evidence. Moreover, none of the documentary evidence provided by Chen's father and made a part of the record addressed the application of China's family planning policy to women, including a single woman like Chen, returning to China with children born abroad; therefore, these documents did not provide the type of evidence that would support Chen's claim. (A.R. 81-82.)

Finally, Chen's sister's experience – while terrible – represents an isolated incident and also does not address the application of China's family planning policy to a single woman, like Chen, returning to China with children born abroad, since it took place while she was living in China. Consequently, Chen has not shown that she will face persecution or torture because of coercive family planning practices upon her return to China.

### 4. Ineffective Assistance of Counsel

Chen also argues that she was denied due process because her counsel was ineffective and incompetent. Initially, Chen's ineffective assistance claim should be brought in a motion to reopen.

---

[7]The Immigration Judge based this finding on the fact that, for at least one of the documents, the translation given to the Government was different from the translation given to the court, which the Immigration Judge felt made all the documents questionable. (A.R. 81.) The Immigration Judge also found it hard to believe that Chen's father simply picked up one of the documents while he was in China in 2006. (*Id.*) The Immigration Judge noted an exchange between Chen and her father in which her father initially testified that Chen had no religion, then turned in the witness stand, looked at Chen, who mouthed some words, and then he said "Jesus Christ." (A.R. 77, 151.) In response, the Immigration Judge noted that Chen's father's testimony, "was very obviously coached. It was very obviously, as far as he was concerned, not true." (A.R. 62.) Indeed, Chen's father gave a very similar answer when asked about his eldest daughter. (A.R. 152.)

*Sall v. Gonzales*, 217 F. App'x 414 (6th Cir. Feb. 6, 2007); *see also Sswajje v. Ashcroft*, 350 F.3d 528, 533 (6th Cir. 2003) ("The proper avenue for raising ineffective assistance of counsel is by filing a motion to reopen proceedings with the BIA."); *Dokic v. I.N.S.*, 899 F.2d 530 (6th Cir. 2009) (per curiam). In *Sall*, the Immigration Judge denied the petitioner's application for asylum and withholding of removal, the Board dismissed his appeal, and he then retained new counsel and appealed directly to the Sixth Circuit. *Id.* at 414-15. The court noted that the petitioner was attempting to present his "ineffective-assistance-*cum*-due process claim to the Sixth Circuit without having presented it to either the IJ or the BIA." 217 F. App'x at 416 (emphasis in original). The court in *Sall* noted that, "this court has held that '[i]neffective assistance of counsel violates an alien's due process rights'" but concluded that, "we lack jurisdiction over this claim because [the petitioner] did not comply with the statutory exhaustion requirement." *Id.* (quoting *Hamid v. Ashcroft*, 336 F.3d 465, 468 (6th Cir. 2003)). Instead *Sall* noted that, "Sall may present his ineffective-assistance claim in a motion to reopen immigration proceedings" and "[s]pecifically, [petitioner] may present his ineffective-assistance claim according to the three-step process of *Matter of Lozada*." *Id.* at 417 (citations omitted). The court recognized that "[i]t seems a motion to reopen would now be time-barred" but nevertheless found that "[o]nly after allowing the BIA to consider the issue might [petitioner] avail himself of this court's review for abuse of discretion." *Id.* at 417 n.3.

Similarly, in this case, Chen is attempting on an appeal from the Board's denial of her application to raise her ineffective assistance of counsel for the first time with this court. Neither

the Board nor the Immigration Judge have had a chance to consider this claim and, under *Sall*, this claim should first be brought in a motion to reopen.

Furthermore, Chen has not complied with the procedural requirements put forth in *Lozada* and she does not offer any persuasive explanation for her failure to do so.   *See Sako v. Gonzales*, 434 F.3d 857 (6th Cir. 2006) ("A successful motion to reopen due to ineffective assistance of counsel before the BIA must satisfy two conditions. First, the claim must present the facts required by [*Lozada*]. . . . Second, the BIA requires that Sako 'must also show that he or she was prejudiced by the actions or inactions of counsel.'").  The requirements provided in *Lozada* are: "(1) that the motion be supported by an affidavit detailing counsel's failings, (2) that counsel be informed of the allegations, and (3) that the motion show that disciplinary charges have been filed with the appropriate authority." *Id.*  Consequently, we deny her claim for ineffective assistance of counsel.

### 5. *Denial of Due Process*

Chen also argues that she was denied procedural due process because the Immigration Judge: (1) failed to properly schedule a hearing for the filing of her I-589 Asylum application; (2) allowed her counsel to file a copy of the application the day of the initially scheduled individual hearing while failing to inform Chen of the problems with her counsel during the next hearing; and (3) failed to consider her evidence on the day of her hearing. (Petitioner's Br. at 30.)  However, Chen does not cite to any case law establishing that any of these claims rise to the level of a denial of procedural due process, nor does it appear that she raised these particular due process problems with the Board. (A.R. 15-16.)  The Fifth Amendment requires that aliens in deportation hearings receive a full and fair hearing. *Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001); *Huicochea-Gomez v. INS*, 237 F.3d

696 (699) (6th Cir. 2001). Here, the Immigration Judge accepted Chen's I-589 asylum application and he did not need to inform Chen of any problems he may have had with her counsel. Furthermore, evidence can be excluded based on late filing. *See Hassan*, 403 F.3d at 436 (noting that the exclusion of an untimely filed letter did not amount to a violation of due process, that a violation of due process only occurs when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case,'" and that it is proper for the Immigration Judge to make and keep deadlines for document filings). Finally, the board did not fail to consider any evidence properly before it on the day of Chen's hearing.[8] Therefore, we deny Chen's procedural due process claims.

## V. CONCLUSION

---

[8]Several pieces of evidence were excluded by the Immigration Judge. Chen submitted photos, which were not considered. However, as the Government points out, these photos were not submitted until the first day of her merits hearing, and they were not admitted into evidence because this delayed filing violated the filing rules of the Immigration Court. (A.R. 102-03.) Chen has not indicated that these photographs could not have been produced earlier.

Furthermore, there is a letter from Wei-Chung Truong listed as Exhibit N, which appears to be a part of Exhibit 4. The letter is dated April 4, 2007 and, therefore, it was not a part of Chen's I-589 application, which was filed on January 22, 2007. (A.R. 94-95, 279.) The letter is addressed "To: The Honor of the Court" and begins "Dear Honor." At the April 5, 2007 proceedings, the Immigration Judge refused to consider a letter in a sealed envelope that was personally addressed to him after noting that he was: "not really inclined to read a letter personally addressed to me. I don't think that's appropriate. Anything else?" (A.R. 103-04.) Since the letter was not properly presented, it was excluded. Thereafter, Chen tried to present similar evidence to the Board in affidavit form. The Board also rejected this affidavit after noting both that Chen had not filed a motion to remand and that the Board was precluded from considering any new evidence presented for the first time on appeal, 8 C.F.R. § 1003.1(d)(3)(iv), and that, even if she had filed a motion to remand, she had not argued that the evidence could not have been provided at the time of Chen's hearing before the Immigration Judge, 8 C.F.R. § 1003.2(c). There was nothing improper about this determination.

We find that the adverse credibility findings of Board and the Immigration Judge were supported by substantial evidence and that Chen has not shown that she will face persecution or torture because of coercive family planning practices upon her return to China.  Furthermore, Chen has not properly presented her ineffective assistance of counsel claim, and we are not persuaded by her procedural due process claims.  Consequently, we **DENY** her petition.